UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **RICHARD HEBERT** | **10-11259** |
| **MADELIN B. HEBERT** | **SECTION A** |
| DEBTORS | CHAPTER 7 |
| **DIONNE SUMMERS FORD** | ADVERSARY NO. |
| PLAINTIFF | **10-1074** |
| VERSUS | |
| **RICHARD HEBERT, JR.** | |
| DEFENDANT | |

## MEMORANDUM OPINION

On December 29, 2010, trial in the above-captioned adversary proceeding came before the Court. Even though the *pro se* defendant, Richard Hebert, Jr. ("Hebert"), filed an Answer in the proceeding,[1] he did not appear at trial. Dionne Summers Ford ("Ford") presented testimonial and documentary evidence. At the conclusion of the trial, the Court took the matter under advisement.

**Facts**

Ford is the owner of the immovable property located at 6745 Dorian Street, New Orleans, Louisiana 70126 ("Property").

On November 2, 2007, Ford entered into a contract with Hebert d/b/a MBH Realty, LLC to repair damages from Hurricane Katrina and for the construction of an addition to the Property.[2] The contract was for a total of $137,000.00. Ford expanded the contract to include bricks on the side

---

[1] P-5.

[2] Ex. 1.

of the house and construction of a balcony,[3] for an additional $7,128.67 or a total construction cost of $144,128.67. (The two contracts between Ford and Hebert are hereinafter collectively referred to as the "Contract.") The Contract included all labor, materials, and inspections.

Ford paid Hebert $120, 834.00:

1. A payment of $4,500.00 October 9, 2006;[4]

2. A payment of $45,667.00 on November 2, 2007[5];

3. A payment of $45,667.00 on February 19, 2008[6]; and

4. A payment of $25,000.00 on August 8, 2008[7].

Hebert represented to Ford that he was a licensed contractor. Besides Hebert's oral representation, he listed a license number on the Contract.[8] Hebert is not a licensed contractor in the State of Louisiana. In signing the Contract, Ford relied on Hebert's representations that he was a licensed contractor.

Without authority from Ford, Hebert removed and failed to return three (3) items from the Property: a swing set, mirrors, and cypress beams.

A building inspection by Professional Home Inspection on September 19, 2008, and the testimony of the inspector, Guy Misuraco, established that Hebert's work was not performed in a

---

[3] Ex. 2.

[4] Ex. 3.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] The number presented was an occupational license as opposed to a general contractor's license.

workmanlike manner.[9]  Specifically, the following items were defective:

- gaps and cracks in exposed finished surfaces of foundation
- soffit and fascia improperly repaired or replaced
- cracks in exterior walls
- inappropriate tread size on stairs
- potential water leakage where balcony connects to house
- insufficient water flow in master shower
- door to balcony was improperly installed
- structure compromised by alteration of roof trusses causing interior ceiling to sag
- outlets not properly routed to GFCI (code violation)
- vanity cabinet not properly secured to wall
- piping to master bath not properly secured to framing
- tile improperly grouted
- leak in piping to whirlpool tub
- missing and improperly installed roof flashing
- damaged flooring in dining area from water leakage
- attic improperly insulated
- edges/seams/gaps in stucco not properly sealed
- glass in patio door is broken
- patio front doors were improperly hung
- fence needs to be replaced

---

[9] Ex. 8.

- kitchen floor is uneven

- improper rail on staircase (code violation)

- some walls unlevel and improperly aligned

- bedroom and master bath windows did not open properly

- oven/range was improperly set in the cabinet

- dishwasher was improperly secured to cabinets.

The February 26, 2009, report of Robert Anderson of Consulting Engineers, LLC corroborated Mr. Misuraca's findings that the work was performed in an unworkmanlike manner.[10]

Cable Lock Foundation Repair estimated on December 3, 2008, that the cost to secure the foundation of the Property was $22,900.00.[11]

On October 8, 2008, Orange County Construction, Inc. ("Orange County") estimated the cost to fix the Property in a workmanlike manner was $95,523.00.[12]

Costs to replace the items removed by Hebert total $5,825.00 and are not covered by the Orange County estimate:[13]

(1) $950.00 to Authement Glass Co. to replace mirrors;[14]

---

[10] Ex. 9.

[11] Ex. 10.

[12] Ex. 11.

[13] The Court did not include all invoiced items for Schwander Roofing and Mister Sparky because these items were covered in the estimate by Orange County. The Court also did not include the invoice by Berner because air conditioning and heating repairs were included in the estimate by Orange County.

[14] Ex. 25.

(2) $3,767.00 to Riverside Lumber Co., Inc. to replace the beams;[15] and

(3) $1,108 to Sam's to replace the swing set.[16]

Ford has already incurred a total of $6,814.42 to secure the Property, make repairs to Hebert's work, or pay fees for inspections included in the Contract:

(1) $233.98 for labor and materials for installation of a roof tarp;[17]

(2) $265.00 for inspection fees paid to Professional Home Inspection;[18]

(3) $2,250.00 for roof repair;[19]

(4) $958.30 materials for roof repair;[20]

(5) $700.00 for inspection fees paid to Robert Anderson with Consulting Engineers, LLC;[21]

(6) $1,625.00 to Paul Rollins for gas and air conditioner inspection;[22]

(7) $317.14 to State Block, Inc.;[23] and

(8) $465.00 to Mister Sparky for electrical inspection fees.[24]

---

[15] Ex. 26.

[16] Ex. 27.

[17] Ex. 18.

[18] *Id.*

[19] Ex. 19.

[20] Ex. 21.

[21] Ex. 22.

[22] Ex. 23.

[23] Ex. 24.

[24] Ex. 28.

**Law and Analysis**

Ford prays that this Court finds the debt owed her by Hebert to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (4).

### Section 523(a)(2)(A) - Fraud

Section 523(a)(2)(A) excepts from discharge debts obtained by "false pretenses, a false representation, or actual fraud." For a creditor to prevail under this section, it must prove by a preponderance of evidence that: (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result of its reliance.[25]

> Debts that satisfy the third element, the scienter requirement, are debts obtained by frauds involving "moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made." *In re Martin,* 963 F.2d 809, 813 (5th Cir.1992). An intent to deceive may be inferred from "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation." *In re Norris,* 70 F.3d 27, 30 n. 12 (5th Cir.1995), citing *In re Miller,* 39 F.3d 301, 305 (11th Cir.1994).[26]

### Hebert Represented that He Was a Licensed Contractor

Ford has proven that Hebert represented both orally and on the Contract that he was a licensed contractor.

---

[25] *General Electric Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005).

[26] *Id*.

**Hebert Knew It Was False and Made it With Intent to Deceive**

Intent may be established by circumstantial evidence.[27] Hebert did not have a contractor's license, yet he typed a license number on the Contract. At trial, the Court took judicial notice of a print out of the Louisiana Licensing Board's hearings for September 2009.[28] Hebert entered a plea of no contest to the charge of "[c]onstructing a residence of performing home improvements in an amount in excess of $75,000 without possessing a state residential license." He was "fined and assessed all costs associated with the proceedings," and "a cease and desist order was issued."[29] The Court finds that Hebert knew he was not a licensed contractor and intended to deceive Ford by listing a license number on the Contract.

**Ford Justifiably Relied on the Representation**

Ford testified that she relied on the representation.

> [Section 523(a)(2)(A)] requires that the creditor demonstrate justifiable reliance on his part, and not reasonable reliance, on a debtor's fraudulent misrepresentation. Justifiable reliance is essentially reliance in fact, and does not require investigation by the creditor to make the reliance justifiable. Reasonableness is not irrelevant, however, "... for the greater distance between the reliance claimed and the limits of reasonableness, the greater the doubt about reliance in fact." *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 446, 133 L.Ed.2d 351, 365 (1995).[30]

The license number on the Contract was sufficient for Ford to expect that Hebert was "a competent contractor, and was in fact licensed."[31] "Professional licenses carry with them a degree

---

[27] *Central Bank v. Kramer (In re Kramer)*, 38 B.R. 80, 83 (Bankr.W.D.La. 1984).

[28] Ex. 5.

[29] *Id.*

[30] *McCain v. Fusuelier (In re Fuselier)*, 211 B.R. 540, 543 (Bankr.W.D.La. 1997).

[31] *Id.* at 544.

of presumed competence."[32] The Court finds Ford's reliance on Hebert's oral representation and the license number printed on the contract to be justifiable.[33]

### Ford Sustained a Loss Due to Reliance

Hebert did not complete repairs to the Property and many of the repairs were made in an unworkmanlike manner. The Contract's original price was $144,128.67. Ford paid Hebert $120,834.00, leaving $23,294.67 still due under the Contract at the time of trial. It will cost Hebert a total of $125,237.42 to finish the job and correct the work performed improperly by Hebert. This results in a damage of $101,942.75.

### Summary

Hebert knowingly and falsely represented to Ford that he was a licensed contractor. He intended to deceive Ford with this misrepresentation. Ford justifiably relied on Hebert's misrepresentation, and as a result, she sustained a loss of $101,942.75. For these reasons, the Court finds that Hebert's owes Ford a nondischargeable debt of $101,942.75.

### Section 523(a)(4) - Larceny

Ford prays that the Court find the debt owed her by Hebert for the swing set, mirrors, and beams he stole from the Property nondischargeable pursuant to section 523(a)(4).

> Section 523(a)(4) ... provides that debts for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" may not be discharged in bankruptcy. 11 U.S.C. § 523(a)(4). This exception is "intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the

---

[32] *Id.* at 545.

[33] *See Id.* at 544. (Reliance on the contractor's license number on the proposal was found to be justifiable.)

debtor's." *Miller v. J.D. Abrams Inc. (Matter of Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (quoting *In re Boyle*, 819 F.2d 583, 588 (5th Cir. 1987)). "The term 'while acting in a fiduciary capacity' does not qualify the words 'embezzlement' or 'larceny.'" 4 Collier on Bankruptcy, ¶ 523.10[2], at 523-76 (15th ed. rev.). Accordingly, the existence of a fiduciary relationship between the debtor and creditor is not necessary in order for a debt for embezzlement or larceny to be non-dischargeable. *Id.*[34]

"Larceny for purposes of § 523(a)(4) requires proof that the debtor wrongfully and with fraudulent intent took property from its rightful owner."[35] "Larceny is commonly understood to be synonymous with theft."[36] Because Ford's allegations of theft fall under "larceny," she need not prove that Hebert was acting in a fiduciary capacity.

The Court finds credible Ford's testimony that Hebert took the swing set, mirrors, and beams and did not return them. Hebert committed larceny by taking items from the Property without Ford's authority and failing to return them. Accordingly, the Court finds that Hebert owes to Ford a $5,825.00 nondischargeable debt, the amount needed to replace the stolen items.

**Personal Liability of Hebert**

Hebert signed the Contract on behalf of MBH Realty Home Improvement Contractors LLC, which is purports to be a Louisiana limited liability company ("LLC"). Louisiana law insulates members, managers, employees, and agents of LLC's from personal liability in most cases.[37]

---

[34] *Savage v. Port Louis Owners Assoc., Inc. (In re Savage)*, 333 Fed.Appx. 831, 835 (5th Cir. 2009).

[35] *McDowell v. McDowell (In re McDowell)*, 2010 WL 3790318, *8 (Bankr.E.D.Tenn. 2010), quoting *Morganroth & Morganroth, PLLC v. Stollman (In re Stollman)*, 404 B.R. 244, 271 (Bankr.E.D.Mich. 2009).

[36] *Id.*

[37] LA R.S. 12:1320(B).

However, Louisiana law provides an exception in the case of fraud, personal negligence, or wrongful acts:

> Nothing in this Chapter shall be construed in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, ...[38]

For example, in *W.J. Spano Co., Inc. v. Mitchell*, the court found that property owners had a cause of action against a landscape architect for creating plans that were "inadequate and [fell] below the professional industry standard which [] resulted in property damage."[39] Similarly in *Regions Bank v. Ark-La-Tex Water Gardens, LLC*,[40] the court held a defendant liable for negligence in designing and installing a water feature. Specifically, the court found that the defendant was "negligent in constructing the water feature without the necessary skill and knowledge required for a project of that size," and La. R.S. 12:1320 "was not intended to shield professionals from liability for personal negligence.[41]

Because the Court finds that Hebert committed fraud by representing that he was a licensed contractor and was negligent in performing the Contract in an unworkmanlike manner, the Court finds that Hebert cannot hide by his LLC and is personally liable. Hebert is also personally liable

---

[38] La. R.S. 12:1320(D).

[39] *W.J. Spano Co., Inc. v. Michell*, 943 So.2d 1131, 1133 (La.App.1 Cir. 2006).

[40] *Regions Bank v. Ark-La-Tex Water Gardens, LLC*, 997 So.2d 734 (La.App. 2 Cir. 2008).

[41] *Id.* (citing *W.J. Spano Co.*).

for the items he took from the Property because theft is a "wrongful act" pursuant to La. R.S. 12:1320(D).[42]

**Conclusion**

The Court finds in favor of Ford and against Hebert in the total nondischargeable amount of $107,767.75.[43] A separate Judgment will be entered in accordance with this Opinion.

New Orleans, Louisiana, February 1, 2011.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[42] *See*, La. R.S. 12:1315(B) which provides that no articles of organization or written operating agreement may "limit or eliminate the liability of a member or manager for the amount of a financial benefit received by a member or manager to which he is not entitled or for an intentional violation of criminal law."

[43] $101,942.75 is nondischargeable pursuant to section 523(a)(2)(A) and $5,825.00 is nondischargeable pursuant to section 523(a)(4) for a total nondischargeable amount of $107,767.75.